## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| JAMES ALEXANDER, | CASE NO. 1:19-CV-00234-SO |
| Petitioner, | JUDGE SOLOMON OLIVER, JR. |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN CHAE HARRIS, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

### INTRODUCTION

On January 30, 2019, Petitioner James Alexander, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254, along with a Memorandum in Support. (ECF #1, 1-1). Respondent Chae Harris, in her official capacity as Warden of the Lebanon Correctional Institution, filed a Return of Writ (ECF #7) on June 13, 2019, and Mr. Alexander filed a Traverse to Return of Writ (ECF #20) on March 13, 2020. The District Court has jurisdiction over the Petition under § 2254(a). On April 12, 2019, pursuant to Local Civil Rule 72.2(b)(2), this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation (ECF #4), and was reassigned to me on May 25, 2021 pursuant to General Order 2021-06 (non-document entry of May 25, 2021).

For the reasons discussed below, I recommend the Petition be **DISMISSED**. I further recommend that Mr. Alexander's request for a hearing be denied. Finally, I recommend that the District Court deny Mr. Alexander a certificate of appealability.

FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

In its opinion affirming Mr. Alexander's convictions, the Ohio Eighth District Court of Appeals summarized the underlying facts as follows:

> {¶ 2} Alexander, who is 19 years old [at the time of the Eighth District's review], and his codefendant, Willie Wilson ("Wilson"), 21 years old, were indicted for the shooting death of Miyazhane Vance ("Vance"), 19 years old, and the shooting of Vance's brother, Brandon Fisher ("Fisher"), 17 years old. They were also charged with attempted criminal acts against Vance's two children . . . .

> {¶ 5} Vance and her two children [A.W. and Z.W.] resided in a small apartment located on East 99th Street in Cleveland, Ohio. Vance's childhood friend, Donella Atwater . . . often stayed at Vance's apartment. [Brandon] Fisher moved in with Vance after their mother, Sharonda Woodland . . . relinquished custody of Fisher to the Department of Children's and Family Services for being unruly.

> {¶ 6} Fisher, [co-defendant Willie] Wilson, Alexander, and Leon Ross . . . were involved with stealing cars and selling drugs. They also carried pistols and revolvers that they obtained by stealing or purchasing. Fisher, Deshaun Moore . . ., Ross, Alexander, and Wilson would hang out at the store, park, or Vance's apartment, drinking alcohol, and smoking marijuana, and cigarettes on a regular basis. Fisher carried a .38 caliber revolver and a .9-millimeter handgun. Wilson carried a .9-millimeter, and Ross carried a .38 Taurus revolver. The group contacted each other by telephone or through Facebook.

> {¶ 7} Fisher testified to his membership in the 93rd Street Boys gang, and Ross's affiliation with the Heartless Felons. Ross was a good friend of Fisher's, but not of Wilson or Alexander.

2

{¶ 8} Wilson began dating Vance in December 2014 and often stayed overnight. Vance gave Wilson a key to the apartment. Fisher, who was at the apartment frequently, was not provided with a key.

{¶ 9} Fisher stopped hanging out with Wilson in March of 2015 because Wilson "started acting crazy. * * * He was trying to get me to do stuff that I didn't want to do." Fisher saw Wilson "now and then" and Alexander even less often. Vance and Wilson were having relationship problems though Wilson continued to come to the apartment. One evening Fisher, Wilson, Ross, and Alexander were riding on the rapid transit, and Wilson was holding Ross's .357 caliber gun that Ross handed to Wilson prior to boarding the train. They had been drinking, fell asleep, and awakened to find that Wilson was gone, as well as Ross's gun. Fisher advised Ross to "leave it alone."

{¶ 10} Shortly after that, about a week prior to the shootings, Vance, Fisher, and Ross went to the home of another young woman to retrieve her apartment keys from Wilson. Vance became angry when the woman's mother said that Wilson was not there and threw rocks at the window. Ross kicked the door open, but everyone left when the woman's mother threatened to call the police.

{¶ 11} Wilson called Fisher via Facebook and told him that he "heard niggas was looking for me." Ross grabbed the phone and asked Wilson about his .357 gun. Wilson told him he had his own gun, "a 40." Fisher could also hear Alexander on the phone with Wilson. Fisher told Wilson that he only needed the keys. Alexander responded that Fisher should not go around "kicking doors like I'm tough." Wilson and Alexander then hung up.

{¶ 12} On April 13, 2014, Fisher and Ross drove a stolen van to a candlelight vigil in Euclid, Ohio for a childhood friend. The police ended the vigil when fights broke out, and later chased Fisher and Ross in the stolen van. Fisher jumped out and walked to his sister's apartment, arriving about 12:30 a.m. His sister, Atwater, and the children were there. Fisher left again to engage in a fruitless search for Ross, stopped at the store and returned to the apartment about 2:00 a.m.

{¶ 13} Vance was in the bedroom with the children and Atwater was in the other bedroom. Both doors were closed. Fisher laid on the floor with a blanket, and pillow near the front door where he could plug in his laptop. At approximately 2:45 a.m., Fisher heard keys, the door opened, Wilson and Alexander stepped over him into the kitchen area of the combined kitchen and living room. Wilson sat down in a chair in front of the kitchen table with his hand in his pocket. Alexander was standing next to him, holding a .357, the gun that Fisher stated Wilson had taken from Ross.

{¶ 14} Alexander told Fisher "I heard you wanted to bust me—he heard I wanted to shoot him and take his gun." Alexander then looked at Wilson who began firing.

3

Fisher curled up on the floor and covered his head with his arms. Wilson shot him twice, and Alexander shot him in the back of the neck. Fisher saw them walk toward Vance's room and heard shots as he faded in and out of consciousness. As he attempted to get up again, Wilson shot him two more times in the right side of his face. Fisher crawled into the hallway attempting to obtain assistance from neighbors. He did not see Wilson and Alexander leave.

{¶ 15} Fisher sustained significant injuries, and was placed in a medically induced coma for three days, hospitalized for three months and entered rehabilitation to regain life skills. Fisher has a permanent stent to maintain blood flo[w] in his neck, suffers from double vision and is deaf in one ear.

{¶ 16} The police interviewed Fisher the day he emerged from the coma. Fisher told the police that Wilson and Alexander entered the apartment and that Wilson shot him. Fisher indicated that Wilson lied to Alexander to induce him to commit the shooting, and that Wilson had previously asked Fisher to conspire with him to kill Alexander, information he had shared with the state. Fisher explained that Wilson wanted to kill Alexander because Wilson wanted Ross's gun.

{¶ 17} Vance's long-time friend Atwater testified that she was in the second bedroom at Vance's apartment at the time of the shooting. Atwater moved in with Vance temporarily at the beginning of April 2014. Fisher was also staying there at the time, and Ross was there often. Fisher and Ross slept on the floor in the carpeted area of the kitchen and living room area.

{¶ 18} Atwater and Vance were in their respective sleeping rooms when Atwater heard an unfamiliar voice in the house asking Fisher questions, and a second unfamiliar voice who spoke infrequently. The voices were not raised. She heard three shots and Fisher called his sister's name. Atwater heard four more shots, screamed and heard people running toward the back of the apartment building and the back door slam.

{¶ 19} Atwater walked into the room and saw Fisher laying in a fetal position in a pool of blood. She attempted to awaken Vance whose son was sleeping beside her. Vance had been shot in the head. Atwater checked on both children, called 911, ran to ask the neighbor for assistance, and called Woodland. Atwater made statements to officers and detectives.

{¶ 20} Vance's neighbor Terrance Harris testified that he heard the shots, opened the door to find Atwater visibly upset and saw Fisher crawling on the floor. He took Atwater's phone, called 911, and remained in his apartment. Vance's other neighbor Catherine Washington . . . also heard the shots and the back door slam. She testified the outer back door lock was broken. Washington heard light tapping at the base of her door and saw a young man lying there in a pool of blood.

4

{¶ 21} Officers and paramedics ("EMS") arrived to secure the scene and transport the injured. Woodland and her younger son also arrived. Medical testimony was elicited from emergency room personnel and attending physicians as to the injuries to Vance and Fisher. The deputy medical examiner, Dr. Andrea McCollum . . . testified that Vance sustained nine gunshot wounds to the head, trunk, and extremities.

{¶ 22} Detective Kathleen Carlin . . ., a ten year homicide detective with 27 years of law enforcement experience, testified there was no sign of force[d] entry. When Fisher emerged from the medically induced coma, he told Detective Carlin he was shot by "Willie and James." Detective Carlin interviewed Alexander at the homicide unit's headquarters with his mother and an attorney on April 29, 2016. Alexander said he "heard" about the shootings, and identified an alibi witness.

{¶ 23} Alexander was released and on May 18, 2015, arrested based on a warrant requested by Detective Carlin, founded primarily due to Fisher's statements and the corroboration of the physical evidence. Detective Carlin stated that Fisher consistently identified Wilson and Alexander as his shooters during at least three interviews with police. Fisher told the police during his statements that he thought that one gun was a semiautomatic, maybe a .40 caliber, but turned out to be a .9-millimeter semiautomatic. The other gun was a .357. At the time of Alexander's arrest, officers told Alexander that he was being arrested for an outstanding warrant. Alexander "blurted out" that, "I didn't do the shooting. I only watched it, but they didn't want to hear that last time."

{¶ 24} Ballistics expert James Kooser . . . recovered seven .9-millimeter bullet casings that he determined were fired by the same weapon, three additional casings that could have been from the same weapon, and one casing was too damaged to assess. Testimony confirmed that a .357 does not leave spent shell casings. Additional forensic evidence provided information about the distances between the guns and the victims at the time of the shootings, bullet holes, and gun residue.

{¶ 25} Detective Al Johnson . . . testified over defense objections based on Crim.R. 16(K), that the defense had not been provided with a copy of Detective Johnson's expert report. Detective Johnson was offered to testify about his gang unit experiences and share his personal knowledge about the "beef" between the Heartless Felons and 93rd Street Boys in light of the testimony regarding the possible membership of Alexander, Wilson, and Fisher in one of those gangs. The state argued that Detective Johnson was not offered as an expert, but as an individual with "specialized knowledge about street gangs within the city of Cleveland" who could provide "insight."

{¶ 26} Counsel for Wilson met with Detective Johnson prior to his trial testimony the next morning. Alexander's counsel maintained that the testimony was simply expert testimony under Evid.R. 702, labeled as "specialized testimony." In light of defense[']s inferences that the shooting could have been the result of a dispute

between gangs, the trial court allowed the testimony with parameters that no information about participants in the current case be introduced or solicited.

{¶ 27} Detective Johnson testified about Cleveland gangs, their organizational structure, membership requirements, rules, and penalties for violating the rules. He also demonstrated the symbolic gang hand signs, tattoos, and discussed the animosity between certain groups. Detective Johnson confirmed that his testimony was not related to the defendants and the current incident. He did confirm that his unit was initially called to the crime scene and made broad inquiries but did not find out anything about what transpired.

*State v. Alexander*, No. 104281, 2017 WL 1407309, at *2-*4 (Ohio Ct. App. Apr. 20, 2017), *appeal not accepted*, 190 N.E.3d 947 (Ohio 2018) (table).

## PROCEDURAL HISTORY

### State Court Conviction

On August 31, 2015, Alexander and Wilson were each charged in a seventeen-count indictment. (ECF #7-1 at PageID 103-13). The charges against Alexander were as follows:

- **Counts 1** and **2**: Aggravated murder of Vance (Ohio Rev. Code § 2903.01), with one- and three-year firearm specifications;

- **Count 3**: Aggravated burglary of Vance and/or Fisher (Ohio Rev. Code § 2911.11);

- **Count 4**: Kidnapping of Vance (Ohio Rev. Code § 2905.01);

- **Count 5**: Murder of Vance (Ohio Rev. Code § 2903.02), with one- and three-year firearm specifications;

- **Counts 6** and **7**: Felonious assault of Vance, with one- and three-year firearm specifications (Ohio Rev. Code § 2903.11);

- **Count 8**: Attempted murder of Fisher (Ohio Rev. Code §§ 2923.03/2903.02), with one- and three-year firearm specifications;

- **Counts 9 and 10**: Felonious assault of Fisher (Ohio Rev. Code § 2903.11), with one- and three-year firearm specifications;

6

- **Count 11**: Kidnapping of Fisher (Ohio Rev. Code § 2905.01), with one- and three-year firearm specifications;

- **Count 12**: Attempted murder of A.W. (Ohio Rev. Code §§ 2923.02/2903.02), with one-and three-year firearm specifications;

- **Count 13**: Felonious assault of A.W. (Ohio Rev. Code § 2903.11), with one- and three-year firearm specifications;

- **Count 14**: Attempted murder of Z.W. (Ohio Rev. Code §§ 2923.02/2903.92), with one-and three-year firearm specifications; and

- **Count 15**: Felonious assault of Z.W. (Ohio Rev. Code § 2903.11), with one- and three-year firearm specifications.

(*Id.* at PageID 103-12).[1]

Trial began on January 25, 2016, and on February 11, 2016, the jury returned a verdict of guilty on each count against Mr. Alexander. (*Id.* at PageID 114). Mr. Alexander was referred to the Cuyahoga County Probation Department for preparation of a pre-sentence investigation and report. (*Id.*).

Mr. Alexander appeared for sentencing on March 15, 2016. (*Id.*). The Court imposed a sentence of 56 years to life, based on the following:

COUNT 1: 30 YEARS TO LIFE, 1 YEAR AND 3 YEAR FIREARM SPECS MERGE, TO BE SERVED PRIOR TO AND CONSECUTIVE TO BASE CHARGE FOR TOTAL OF 33 YEARS TO LIFE.

COUNT 3: 11 YEARS, 3 YEAR FIREARM SPEC TO BE SERVED PRIOR TO AND CONSECUTIVE TO BASE CHARGE FOR TOTAL OF 14 YEARS.

COUNT 8: 11 YEARS, 3 YEAR FIREARM SPEC TO BE SERVED PRIOR TO AND CONSECUTIVE TO BASE CHARGE FOR TOTAL OF 14 YEARS.

COUNT 12: 11 YEARS, 3 YEAR FIREARM SPEC TO BE SERVED PRIOR TO AND CONSECUTIVE TO BASE CHARGE FOR TOTAL OF 14 YEARS.

---

[1]     Wilson alone was charged in the remaining two counts with having weapons under disability. (ECF #7-1 at PageID 112-13).

COUNT 14: 11 YEARS, 3 YEAR FIREARM SPEC TO BE SERVED PRIOR TO AND CONSECUTIVE TO BASE CHARGE FOR TOTAL OF 14 YEARS.

COUNTS 8, 12, 14 UNDERLYING 11 YEARS TO RUN CONCURRENT; COUNTS 1, 8, 12, 14, GUN SPECS TO RUN CONSECUTIVE TO EACH OTHER FOR A TOTAL OF 12 YEARS.

COUNT 3 TO RUN CONSECUTIVE TO ALL COUNTS.
SUMMARY OF SENTENCE ABOVE IS: COUNT 1 - 30 YEARS TO LIFE PLUS COUNTS 1, 8, 12, 14 - 12 YEARS ON GUN SPECS; PLUS COUNT 3 - 14 YEARS FOR A TOTAL OF 56 YEARS TO LIFE.

MANDATORY PAROLE IS PART OF SENTENCE.

(*Id.* at PageID 116-17).

**Direct Appeal**

On March 25, 2016, through new counsel, Mr. Alexander filed a Notice of Appeal with the Eighth District Court of Appeals. (*Id.* at PageID 118). He filed his Merits Brief on July 22, 2016, asserting seven assignments of error, as follows:

1.  The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(a), on the charges, and thereafter entering a judgment of conviction of that offense as those charges were not supported by sufficient evidence, in violation of defendant's right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution.

2.  Appellant's convictions are against the manifest weight of the evidence.

3.  The trial court erred by denying Appellant's motion for a separate trial from that of his co-defendant.

4.  Appellant was denied a fair trial by the witness' improper comments while testifying.

5.  The trial court erred when it admitted other acts testimony in violation of R.C. 2945.59, Evid.R. 404(B) and Appellant's rights under Article I, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

6.　　The trial court erred by ordering Appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB 86.

7.　　The court costs imposed at the sentencing hearing infringes upon Appellant's rights under the Eighth and Fourteenth amendments to the United States Constitution, R.C. 2929.18, R.C. 2919(b )(5), R.C. 2947. 14, and related sections of the Ohio Constitution.

(*Id.* at PageID 124-25). The State filed its Appellee's Brief on September 14, 2016. (*Id.* at PageID 170-95). It does not appear that Mr. Alexander filed a Reply Brief. (*See generally id.* at PageID 101-02).

On April 20, 2017, the Eighth District issued its Journal Entry and Opinion, affirming the trial court's judgment in all respects. (*Id.* at PageID 196-225; *see also State v. Alexander*, 2017 WL 1407309, at *1). On June 5, 2017, Mr. Alexander filed a Notice of Appeal in the Ohio Supreme Court, seeking a discretionary jurisdictional appeal on the basis that his case involved "substantial constitutional questions, and is one of public or great general interest." (ECF #7-1 at PageID 270; *see also* Ohio Supreme Court Rule of Practice 5.02(A)(3)). His Memorandum in Support of Jurisdiction asserted the following Propositions of Law:

- Codefendants are entitled to separate trials where the evidence against one of the accused deprives the other of his right to a fair trial.

- The jury's exposure to irrelevant testimony about gang affiliation, gang rules and conduct, can be damning evidence and the trial court fails its gatekeeper function by not limiting that evidence where necessary.

- When the lead detective in a murder investigation vouches for the credibility of a State witness, that testimony is improper and violates the accused's right to due process and a fair trial.

(ECF #7-1 at PageID 277, 279, 280). The State filed a Memorandum In Opposition To Jurisdiction on July 5, 2017. (*Id.* at PageID 283-98).

9

Then, on July 18, 2017, acting through new appellate counsel, Mr. Alexander filed with the Eighth District an Application to Reopen Appeal Pursuant to Ohio Rule of Appellate Procedure 26(B). (*Id.* at PageID 227-40). The Application sought to raise four additional assignments of error that Mr. Alexander claimed were "meritorious issues of constitutional dimension that he hereafter forfeits from pursing in future litigation, and foregoes any relief he might otherwise receive, because his attorney did not at least present the issues that follows." (*Id.* at PageID 232). Those additional assignments of error were as follows:

- The trial court violated Mr. Alexander's right due process and a fair trial by permitting the State to introduce cell phone record data analysis that he claimed showed Mr. Alexander's phone was in the vicinity of the shooting at the time that it occurred.

- The trial court violated James Alexander's rights to due process and a fair trial by allowing the prosecution to taint the jury by injecting irrelevant but extremely damning testimony about street gangs and gang affiliations through witnesses including a "so-called" street gang expert.

- The mandatory sentencing provision under R.C. 2929.02(A) is unconstitutional as applied in the instant matter where it requires the trial court to impose a life sentence notwithstanding the defendant's juvenile status and his at worst secondary role in the underlying misconduct.

- The trial court's imposition of consecutive sentences after it found that Mr. Alexander's juvenile criminal history reflects that they were necessary to protect the public is not justified on this record.

(*Id.* at PageID 232-37). The State opposed the request to reopen. (*Id.* at PageID 242-50). On December 12, 2017, the Eighth District denied the Application, finding that Mr. Alexander had not established prejudice resulting from the alleged ineffectiveness of his original appellate counsel so as to support a reopening. (*Id.* at PageID 251-60).

Mr. Alexander's counsel attempted to appeal that decision, but the Notice of Appeal was filed one day beyond the 45-day limit imposed by Rule 7.01(A)(1)(a)(i) of the Ohio Supreme

Court's Rules of Practice. (*Id.* at PageID 262-63). For unknown reasons, rather than file a Motion for Delayed Appeal pursuant to Rule 7.01(A)(4)(a) of the Rules of Practice, on January 29, 2018, Mr. Alexander's counsel filed a Motion for Relief from Judgment Pursuant to Rule of Civil Procedure 60(B), asking the Eighth District "to vacate the judgment it entered on December 12, 2017 and reissue that decision so that undersigned counsel can seek an appeal from it in the Ohio Supreme Court." (*Id.* at 262). Without substantive explanation, the Eighth District denied the motion on March 14, 2018. (*Id.* at 268).

On January 31, 2018, the Ohio Supreme Court declined to accept Mr. Alexander's jurisdictional appeal of the Eighth District's original decision affirming his convictions. (*Id.* at PageID 299; *State v. Alexander*, 190 N.E.3d 947 (Ohio 2018) (table)). On January 30, 2019, Mr. Alexander filed his Petition in this matter. (ECF # 1).

### FEDERAL HABEAS CORPUS

Filed through counsel, Mr. Alexander's Petition sets forth four grounds for relief, as follows:

> **First Ground**: Petitioner's joint trial with his older and more culpable codefendant violated his right to due process and a fair trial.

> **Second Ground**: The State of Ohio violated Alexander's rights to due process and a fair trial by permitting one of its witnesses to vouch for the credibility of another essential prosecution witness.

> **Third Ground:** State Appellate Counsel was ineffective for failing to appropriately challenge the admissibility of improper, unreliable, and prejudicial evidence when he challenged its introduction on direct appeal, and, thereby, violated Alexander's right to due process.

> **Fourth Ground:** State Appellate Counsel was ineffective where he failed to argue that trial counsel should have challenged the constitutionality of R.C. 2929.02(A)'s mandatory sentencing provision as applied to Alexander where it requires the trial

11

court to impose a life sentence notwithstanding his juvenile status and the fact that, at worst, he played only a secondary role in the underlying misconduct.

(ECF #1-1, PageID 23, 25, 26, 27.) Mr. Alexander requests that the Court conduct a hearing, issue a writ of habeas corpus discharging him from his imprisonment, and for such other relief as the Court deems just and proper. (*Id.* at PageID 30).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 governs Mr. Alexander's petition for writ of habeas corpus. *Lindh v. Murphy,* 521 U.S. 320, 336 (1997). The AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker,* 501 U.S. 797, 805 (1991). The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer,* 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams*, 529 U.S. at 412. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza,* 540 U.S. 12, 17 (2003) (per curiam). A state-court decision is an unreasonable determination of the facts only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). A petitioner bears the burden to rebut the state court's factual findings "by clear and convincing evidence." § 2254(e)(1). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86,  102 (2011).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Id.* at 102-03 (quoting *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in

federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

DISCUSSION

As noted above, Mr. Alexander's Petition sets forth four grounds for relief. I find that none have merit.

**First Ground for Relief**

Initially, Mr. Alexander alleges his joint trial with co-defendant Wilson was improper and violated his rights to due process and a fair trial. (ECF #1-1 at PageID 23). In particular, he alleges the joint trial violated his rights under the Fifth and Fourteenth Amendments. (ECF #20 at PageID 3231).

According to Mr. Alexander, prior to trial he moved "to sever the cases arguing that the evidence against Wilson would unfairly hamper Mr. Alexander's ability to confront and defend himself . . . ." (ECF #1-1 at PageID 23). The docket from the trial court does not indicate any written motion to sever was filed by Mr. Alexander. (*See* ECF #7-1 at PageID 201-207). However, a review of the trial court's on-line docket shows that co-defendant Wilson's counsel did file a motion to sever on his behalf. (*See also* ECF #7-2 at PageID 49) (trial court judge noting "So the motion to sever, I believe, is filed by Mr. Wilson."). The trial court denied this motion. (*See id.* at PageID 61) ("So having considered all of this information, the briefs of the parties, I'm going to deny the motion to sever, allow the state try both of these defendants together. It's really the best way to do it.").

In his appeal to the Eighth District, Mr. Alexander presented this as a question of the trial court not properly applying Ohio law respecting the right to a separate trial, citing Rules 8 and 14

of the Ohio Rules of Criminal Procedure. (ECF #7-1 at PageID 159). His appeal brief did not

contend that any federal constitutional rights had been violated; as a result, the Eighth District's

opinion did not resolve any questions of federal law in resolving this issue. Therefore, this issue

was not fairly presented to the state courts. *See generally McMeans v. Brigano*, 228 F.3d 674, 681

(outlining four actions a defendant can take to ensure a claim is fairly presented). "General

allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that

specific constitutional rights were violated." *Id.* Accordingly, I conclude that this claim has been

waived. *See Holt v. Bradshaw*, No. 3:11 CV 2126, 2012 WL 6949702, at *7 (N.D. Ohio Oct. 31,

2012) ("If a state defendant fails to fairly present a federal constitutional claim to the state courts,

he waives the claim for the purpose of federal habeas review."), *report and recommendation adopted*,

2013 WL 322203 (N.D. Ohio Jan. 28, 2013).

Even if not waived, however, this claim fails on its merits. In his appeal to the Eighth

District, Mr. Alexander argued that "[t]he trial court erred by denying Appellant's motion for a

separate trial from that of his co-defendant." (ECF #7-1, at PageID 127, 158). After reviewing this

claim, the Eighth District found it to be without merit. Mr. Alexander renewed this argument in

his application for an appeal to the Ohio Supreme Court, asserting in the first Proposition of Law

that "Codefendants are entitled to separate trials where the evidence against one of the accused

deprives the other of his right to a fair trial." (ECF #7-1 at PageID 277).

A petitioner seeking habeas relief "on the basis of a trial court's failure to sever his trial

from his co-defendants bears a very heavy burden." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir.

2001), *cert. denied*, 537 U.S. 831 (2002). As the Sixth Circuit further explained in *Stanford*:

> As a general rule, joint trials are favored. Jurors are presumed to follow the
> instructions of the court and to give each defendant's case separate consideration.

> The mere potential for confusion, standing alone, will not outweigh society's interest in the speedy and efficient resolution of criminal trials.

*Id.* (citations omitted). Relief is available only when there is a showing of *actual prejudice. See Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007).

The Eighth District specifically found Mr. Alexander suffered no prejudice from his joint trial with co-defendant Wilson:

> {¶ 45} Alexander's third challenge is to the denial of his motion to sever. Civ.R. 8(B) allows joinder of criminal defendants involved in the same acts or transactions, while Civ.R. 14 mandates severance where joinder prejudices a defendant.

>> "The law favors joining multiple criminal offenses together in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.' " *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). A defendant requesting severance "has the burden of furnishing the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial." *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). A defendant claiming error in the denial of severance must affirmatively show that his rights were prejudiced and that the trial court abused its discretion in refusing separate trials. *Id.*

>> "Where evidence of each of the joined offenses would be admissible at separate trials, severance is not required because prejudice due to the cumulation of evidence or the inference of a criminal disposition is largely absent." *State v. Hamblin*, 37 Ohio St.3d 153, 159, 524 N.E.2d 476 (1988).

> *State v. Sapp*, 105 Ohio St.3d 104, 2004–Ohio–7008, 822 N.E.2d 1239, ¶ 69–70.

> {¶ 46} Alexander argues that the evidence against Wilson "spilled over to him," that the evidence involving Wilson had nothing to do with Alexander. The record does not support Alexander's argument.

> {¶ 47} The state offers that the evidence Alexander complains of regarding Wilson and Fisher's gang memberships, photographs of them holding guns, information about Wilson's relationship with Vance, were offered to support the relationship of the parties and Fisher's identification of Wilson and Alexander as the culprits. Evidence offered also supports the method of access to the apartment where Alexander stated to police that he was present, but was not shooting.

{¶ 48} We do not find that Alexander was prejudiced by the denial of severance. "[T]he evidence is direct and uncomplicated and could be reasonably separated as to each offense." *State v. Elam*, 8th Dist. Cuyahoga No. 103122, 2016-Ohio-5619, ¶ 66, quoting *State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 22. We find that the joinder was not prejudicial. The third assigned error is overruled.

*Alexander*, 2017 WL 1407309, at *8-*9.

Mr. Alexander has not shown the Eighth District's conclusion was contrary to, or an unreasonable application of, federal law. In a footnote in its opinion in *United States v. Lane*, 474 U.S. 438 (1986),[2] the Supreme Court stated that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder [constitutes] a constitutional violation only if it results in prejudice so great as to deny a defendant his ... right to a fair trial." *Id.* at 446. But *Lane*'s language regarding the failure to sever is only *dicta* and thus not clearly established federal law justifying federal habeas relief. *See Mayfield v. Morrow*, 528 F. App'x 538, 541-42 (6th Cir. 2013) ("Thus, as to Mayfield's severance claim, *Lane* does not clearly establish anything."); *see also Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010) ("The language upon which Collins refers is dicta. *Lane* dealt with the joinder of standards under Federal Rules of Criminal Procedure 8 and 52; no constitutional issue was before the Court."); *Roberson v. Stephens*, 614 F. App'x 124, 135 (5th Cir. 2015) (expressing "grave doubts that two sentences of dicta in a footnote [in *Lane*] could constitute 'clearly established Federal law, as determined by the Supreme Court'") (quoting 28 U.S.C. § 2254(d)(1)).

Even if *Lane*'s footnote comment applied on federal habeas review, Mr. Alexander cannot obtain relief unless, as noted above, he demonstrates actual prejudice resulting from the trial

---

[2]        Cited by Mr. Alexander in his Traverse. (*See* ECF #20 at Page ID 3231).

court's failure to sever. *See Coley v. Bagley*, 706 F.3d 741, 753 (6th Cir. 2013) ("Misjoinder is not per se unconstitutional, but rises to that level if it results in prejudice so great as to deny a defendant his due process right to a fair trial."); *see also Davis*, 475 F.3d at 777. The Eighth District's determination that Mr. Alexander failed to establish prejudice from his joint trial because the evidence was "direct and uncomplicated," *Alexander*, 2017 WL 1407309, at *9, was reasonable and not contrary to or an unreasonable application of federal law.

This conclusion remains unchanged even if one views Mr. Alexander's first ground for relief as a challenge to the trial court's admission of the alleged "spillover evidence," including that co-defendant Wilson and Fisher were members of the Heartless Felons gang, pictures of Wilson and Fisher holding guns, and the relationship between Wilson and Fisher's sister. (*See* ECF #1-1 at PageID 23; ECF #20 at PageID 3232; *see also Alexander*, 2017 WL 1407309, at *8).

"With regard to evidentiary rulings, the standard for habeas relief is not easily met." *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017). "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (such rulings "are usually not to be questioned in a federal habeas corpus proceeding") (quotation omitted). If a ruling is especially egregious and "results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citing *Coleman*, 244 F.3d at 542).

Importantly, however, as a general matter, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). "Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Wilson*, 874 F.3d at 476 (citing *Seymour*, 224 F.3d at 552).

Evidence of gang membership does carry some risk of unfair prejudice. *See United States v. Jobson*, 102 F.3d 214, 219 n.4 (6th Cir. 1996). But there is no outright prohibition on the admission of such evidence; rather, "evidence of gang affiliation can be sufficiently probative to survive a Rule 403 challenge." *United States v. Williams*, 158 F. App'x 651, 653 (6th Cir. 2005). Moreover, the Ohio Supreme Court – whose rulings controlled the trial court's decision in the first instance – has held that evidence of a defendant's gang affiliation is admissible pursuant to Ohio Evidence Rule 404(B) to show motive. *State v. Bethel*, 854 N.E.2d 150, 182 (Ohio 2006). This is particularly the case where "the interrelationship between people is a central issue." *Id.* (quoting *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999)).

The Eighth District found that the challenged evidence was admissible for permissible purposes. I find no federal constitutional error in this analysis. After all, "a defendant is not entitled to severance merely because he might have had a better chance of acquittal in a separate trial." *Stanford v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001) (citing *Zafiro v. United States*, 506 U.S. 534 (1993)).

Finally, I note that the trial court gave a limiting instruction to that jury that it had to consider the evidence against Mr. Alexander and his co-defendant separately:

Multiple defendants. You must decide separately the question of the guilt or innocence of each of the two defendants. If you cannot agree upon a verdict as to both of the defendants, but do agree as to one, you must render a verdict as to the one upon whose guilt or innocence you do agree.

You must separately consider the evidence applicable to each defendant as though he were being separately tried, and you must state your finding as to each defendant uninfluenced by your verdict as to the other defendant.

(ECF #7-13 at PageID 2721). This instruction is drawn directly from the Ohio Official Jury Instructions. *See* Ohio Judicial Conference, *Ohio Jury Instructions-Criminal* at § 425.05 (2021). Any potential prejudice is sufficiently mitigated through the issuance of this instruction by the trial court, which the jury is presumed to have followed. *See Lang v. Gundy*, 399 F. App'x 969, 974-75 (6th Cir. 2010) (noting that the Sixth Circuit "recognizes the effectiveness of curative instructions in mitigating prejudice" and "[t]here exists an almost invariable assumption of the law that jurors follow their instructions") (internal quotations omitted).

In the end, Mr. Alexander has not shown that his joint trial with Mr. Wilson resulted in a fundamentally unfair trial. For these reasons, I find that Mr. Alexander's first ground for relief is without merit.

**Second Ground for Relief**

Next, Mr. Alexander alleges his rights to due process and a fair trial were violated when the prosecution elicited testimony from the lead investigating detective that improperly vouched for the credibility of another witness. (ECF #1-1 at PageID 25.) The Petition, the Memorandum in Support, and the Traverse are each silent as to the specific federal right or rights allegedly violated. Before the Eighth District, Mr. Alexander asserted this testimony violated "his right to a fair trial." (ECF #7-1, at PageID 160). As noted above, this generalized invocation of a federal right does not fairly present the claim to the state court. Accordingly, this claim is also waived.

20

Even if not waived, this claim – presumably grounded in rights guaranteed by the Fifth and Fourteenth Amendment – also lacks merit. Mr. Alexander takes specific issue with statements by "the lead detective in that case" to the effect that Mr. Fisher's "accounts [of the shooting] were consistent." (ECF #1-1, at PageID 25). He argues that this witness "opined that Fisher has 'been consistent from the day that he came out of the coma to the day that he testified in this court . . . of the circumstances surrounding' the shooting." (*Id.*)

With respect to vouching, the Sixth Circuit has held:

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness. Improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury. . . .

*United States v. Trujillo*, 376 F.3d 593, 607-08 (6th Cir. 2004) (cleaned up). This rule extends to questions by a prosecutor that leads to vouching by a government witness. *See, e.g., Dorsey v. Banks*, 749 F. Supp. 2d 715, 757 (S.D. Ohio 2010).

It is, however, a high burden for a habeas petitioner to obtain relief based on improper vouching, particularly when the offending testimony comes not directly from the prosecutor but from a government witness. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief in a witness's credibility or in a defendant's guilt must be flagrant and not isolated. *See United States v. Humphrey*, 287 F.3d 422, 433 (6th Cir. 2002). Further, even if statements are improper, "the Sixth Circuit has recognized that improper vouching is rarely sufficient to be afforded habeas relief." *Skidmore v. Kelly*, No. 4:11CV1760, 2012 WL 5197251, at *4 (N.D. Ohio Oct. 19, 2012) (citing *Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000) (collecting cases)). As the

21

*Dorsey* Court noted: "The Court has been unable to locate a single case decided by the Sixth Circuit Court of Appeals . . . where a prosecutor's questioning of a law enforcement officer about the truthfulness of a witness led to the grant of a writ of habeas corpus." 749 F. Supp. 2d at 757.[3]

Here, the challenged testimony from the detective initially came in response to a question, not from the prosecutor, but from counsel for co-defendant Wilson:

**BY MR. TITTLE [counsel for Defendant Willie Wilson]:**

Q.      All right. You know he's [Brandon Fisher] told a number of different stories, correct?

A.      In my opinion, no. I think ~

MR. KERSEY: Objection.

THE COURT: Overruled.

A.      He's been consistent from the day that he came out of the coma to the day he testified in this court, in my opinion, on the circumstances surrounding his shooting and the homicide of Miyazhane Vance.

MR. SCHLACHET: Objection as to her opinion. Move to strike.

THE COURT: Overruled.

Q.      Consistent?

A.      Yes.

Q.      You are telling the ladies and gentlemen of the jury that you find his testimony consistent?

A.      Correct.

---

[3]      The sole exception was *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988), in which a police officer improperly gave "expert" testimony to the effect that the evidence did not link any other potential suspects whose names had been brought up by the defendant to the crime with which the defendant was charged. The testimony challenged in this case does not rise to the same level as that found improper in *Cooper*.

(ECF #7-11 at PageID 2405-06).

During redirect examination of the detective, the prosecutor did not ask any questions specifically related to the consistency of Mr. Fisher's testimony. (*See id.* at PageID 2413-15). In response to a question from the prosecutor about there being no evidence that the shooting was gang-related, however, the detective answered in part: "The facts, the circumstances surrounding the crime scene, the information provided by Brandon all matched up to how the events occurred, including the animosity between Miyazhane Vance and Willie Wilson and Brandon and Willie Wilson and James Alexander." (*Id.* at 2414). And, during her closing argument, the prosecutor argued with respect to Mr. Fisher: "He has always been consistent with the identification of the two individuals responsible for this homicide and for the other crimes that they are charged with." (ECF #7-14 at PageID 2766). I therefore treat this as if the prosecutor, either directly or through the detective testimony, engaged in vouching.

Despite this, these instances of vouching appear isolated and not flagrant. In a transcript containing 3031 pages spread across 14 volumes, and with trial itself spanning eight days, the challenged testimony and argument by the prosecutor occupies approximately six pages. (*See* ECF #7-11 at PageID 2405-06, 2413-15;  ECF #7-14 at PageID 2766). At best, this is isolated. Further, the testimony and argument are not flagrant. Rather, they are more akin to the prosecutor stating a witness is "telling the truth," and there is no evidence the prosecutor "express[ed] a personal belief in the witnesses' credibility or impl[ied] that the prosecutor had special knowledge of facts not before the jury." *Wilson v. Bell*, 368 F. App'x 627, 634-35 (6th Cir. 2010).

Finally,  the Eighth District found Mr. Alexander's argument on this issue unpersuasive under state law:

{¶ 50} We recently observed on this issue:

> It is reversible error to admit testimony from a purported expert or lay witness attesting to the believability of another's statements. *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989). "[I]n our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." *State v. Pizzillo*, 7th Dist. Carroll No. 746, 2002–Ohio–446, 2002 Ohio App. LEXIS 162, 15 (Jan. 17, 2002), citing *Boston* at 129.

*State v. Daniel*, 2016-Ohio-5231, 57 N.E.3d 1203, ¶ 48, 2016 WL 4141193 (8th Dist.). The rule also extends to police. *See State v. Davis*, 116 Ohio St.3d 404, 2008–Ohio–2, 880 N.E.2d 31 (police officer's testimony that accused was being "very deceptive" was erroneously admitted).

{¶ 51} We find, however, that to the extent Detective Carlin's statements may be deemed to be an opinion, the error was harmless because it did not affect a substantial right. *State v. Lytle,* 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976). "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Allen*, 8th Dist. Cuyahoga No. 92482, 2010-Ohio-9, ¶ 51, citing *State v. Brown*, 65 Ohio St.3d 483, 485, 1992–Ohio–61, 605 N.E.2d 46.

{¶ 52} We find that, viewing the entire record, Detective Carlin's statement that she found Fisher's statements to be consistent on certain facts was harmless error and did not change the outcome of the case.

*Alexander*, 2017 WL 1407309, at *9.

Given that Mr. Alexander's burden under federal habeas law on this issue is even higher, there is ample reason to find this argument unavailing. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and independent to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991).

I therefore find no merit in Mr. Alexander's second ground for relief.

24

**Third Ground for Relief**

Mr. Alexander's third argument is that his original appellate counsel was ineffective in not challenging the admissibility of the evidence relating to the gang affiliations and activities of co-defendant Wilson and trial witness Fisher. (ECF #1-1 at PageID 26.) Although the issue was briefed in the original Memorandum in Support of his Petition (*id.* at PageID 26-27), Mr. Alexander's Traverse did not address this issue (*see generally* ECF #20). Respondent maintains that this ground for relief is procedurally defaulted, and otherwise without merit. (ECF #7 at PageID 89-93).

Mr. Alexander did not pursue this issue to the highest state court, and his failure to address the issue in his Traverse has not shown cause or prejudice or a miscarriage of justice to excuse the default. *See Coleman*, 501 U.S. at 750.     Furthermore, Mr. Alexander has not shown that his counsel fails the standard found in *Strickland v. Washington*. 466 U.S. 668 (1984). To establish ineffective assistance of counsel under the Sixth Amendment, a petitioner must show that his counsel's performance was so deficient so as to fall below an objective standard of reasonableness, and that he suffered prejudice as a result. *Id.* at 687-89. Either ground—deficiency or prejudice—is sufficient ground for courts to determine effectiveness of counsel under *Strickland*. *Id.* at 697.

I do not agree with Mr. Alexander's contention that his original appellate counsel did not "properly raise[] this issue in the Court of Appeals." (ECF #1-1 at PageID 27). A review of Mr. Alexander's Appellant's Brief to the Eighth District shows that Assignments of Error III and V both attacked the propriety of the trial court's admission of the gang-related activities of Wilson

and Fisher. For example, Assignment of Error III, which challenged Mr. Alexander's joint trial

with Wilson, asserted as follows:

> It was brought out that Willie Wilson was a member of the Heartless Felons Gang. Brandon Fisher was also a gang member, belonging to The 93rd Boys. There were pictures of both of them introduced holding guns. These should not apply to Appellant, but they did. Willie Wilson was dating Brandon's sister. This had nothing to do with Appellant, but it was presented as them all being involved together, which they were not. The State even went so far as to put on as a witness a gang "expert," a detective who was familiar with Cleveland street gangs and their inner workings. How does that not prejudice Appellant?

(ECF #7-1 at PageID 160).

Further, in Assignment of Error V, which presented a challenge to other acts testimony the

trial court admitted pursuant to Ohio Evidence Rule 404(B), Mr. Alexander argued:

> In this case, the State relied on inferences to implicate Appellant as being a gang member, although there was no evidence of that. This "bootstrapping" of incidents of prior meaningless, irrelevant alleged incidents regarding Appellant was prejudicial and improper under both the Revised Code and the Ohio Rules of Evidence.
>
> * * *
>
> The sole purpose of the testimony elicited by the State was to attempt to show that he attempted to act in conformity with the crimes of which he was charged. The cumulative testimony of those witnesses as set forth above did nothing more than persuade the jury that Appellant is bad as he too must be involved in gang activity and therefore he should be convicted of aggravated murder because of that. The prejudicial effect outweighed any probative value. This denied Appellant of a fair trial. His convictions should therefore be reversed.

(*Id.* at PageID 164-65.)

From this, I conclude that Mr. Alexander's counsel did, in fact, challenge the trial court's

decision to admit evidence concerning potential gang affiliation. As noted above, I also found that

admission of this evidence did not deprive Mr. Alexander of a fair trial. Therefore, I find Mr.

Alexander's original appellate counsel was not ineffective in the representation provided to Mr. Alexander.

Mr. Alexander's third ground for relief is without merit.

**Fourth Ground for Relief**

As a final basis for relief, Mr. Alexander alleges his original appellate counsel was ineffective in not challenging the constitutionality of Ohio Revised Code § 2929.02(A). (ECF #1-1 at PageID 27.) According to Mr. Alexander, Revised Code § 2929.02(A) is unconstitutional as applied to juveniles[4] because it mandates a life sentence on conviction and does not permit an accused to raise "essential mitigating factors." (*Id.* at 28.)      Initially, I note Mr. Alexander has procedurally defaulted this ground for relief on the basis of ineffective assistance of appellate counsel. As explained above, Mr. Alexander was denied his Ohio Appellate Rule 26(B) application to reopen appeal; a delayed appeal is not available from the denial of a Rule 26(B) application. *See* Ohio Sup. Ct.  Prac. R. 7(A)(4)(c). As such, Mr. Alexander has failed to present this ineffective assistance to the highest state court, and can no longer do so. Therefore, the claim of ineffective assistance of appellate counsel is procedurally defaulted.

Moreover, Mr. Alexander has not shown cause to excuse this default. He argues his counsel was unaware of the unfavorable Rule 26(B) ruling and thereby miscalculated the due date for the appeal to the Ohio Supreme Court. However, Mr. Alexander has no right to appellate counsel beyond the first appeal as of right; there is no right to appellate counsel in discretionary appeals. *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987). A constitutional claim of ineffective assistance of

---

[4]      Mr. Alexander was 17 years old at the time of the shooting. (*See* ECF #7-1 at PageID 312).

counsel is only available where there is a right to counsel under the Sixth Amendment. *Coleman*, 501 U.S. at 752. *Murray v. Carrier* establishes that, if an attorney's performance is not constitutionally ineffective under *Strickland*, there is no inequity in requiring the petitioner to bear the risk of attorney error, even if such error results in procedural default. 477 U.S. 478, 487-88 (1986).

Because Mr. Alexander does not have a right to counsel in his discretionary appeal to the Ohio Supreme Court, and because there is no clear ineffectiveness of his counsel under *Strickland*, a claim of ineffective assistance of counsel here does not excuse his procedural default.

Proceeding to the Eighth Amendment portion of this claim, in evaluating this argument, it is important to note that Mr. Alexander was not sentenced to life without the possibility of parole. Rather, as the Eighth District noted in its decision denying the Appellate Rule 26(B) application, the trial court specifically included the possibility of parole as part of its sentencing entry: "MANDATORY PAROLE IS PART OF SENTENCE." (ECF #7-1 at PageID 117; *see also State v. Alexander*, No. 104281, 2017 WL 6398305, at *2 (Dec. 12, 2017)).

As a result, I agree with the State that because Mr. Alexander's "sentence included the possibility of parole, he was not prejudiced when appellate counsel failed to challenge the sentence under a line of cases which exclusively applied to life sentences without parole eligibility." (ECF #7 at PageID 97). Indeed, this issue was thoroughly explored in the Eighth District's decision denying Mr. Alexander's Appellate Rule 26(B) application, as follows:

{¶ 10} Alexander's third proposed assignment of error is that:

> The mandatory sentencing provision under R.C. 2929.02(A) is unconstitutional as applied in the instant matter where it requires the trial court to impose a life sentence notwithstanding the defendant's juvenile status and his at worst secondary role in the underlying misconduct.

28

{¶ 11} Alexander, through his third proposed assignment of error, argues that the imposition of a life sentence without the possibility of parole, under R.C. 2929.02(A), is unconstitutional. Specifically, Alexander argues that the sentence imposed by the trial court violated the holdings established in *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890; *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012); *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).

{¶ 12} Alexander, however, was not sentenced to a life sentence of incarceration without the possibility of parole. In fact, the trial court stated that "mandatory parole is part of sentence" in the sentencing journal entry. Thus, the case law cited by Alexander is not applicable to his sentence of incarceration.

{¶ 13} In addition, this court addressed a similar argument in *State v. Terrell*, 8th Dist. Cuyahoga No. 103428, 2016-Ohio-4563, and held that:

> Terrell argues the mandatory 15 years to life sentence he received is unlawful based on this precedent. However, Terrell's sentence is different from the sentences at issue in *Miller*, *Graham*, and *Long* because he was not sentenced to life without the possibility of parole. Terrell is entitled to parole hearings after 21 years to determine if he has been rehabilitated to such an extent that he may re-enter society. Indeed, rehabilitation is a legitimate goal of penal sanctions. *Graham*, 560 U.S. at 71, 130 S.Ct. 2011, 176 L.Ed.2d 825.

> Furthermore, this court has refused to extend the rationale in *Miller*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407, *Graham*, *Roper*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1, and *Long* to sentences where parole is afforded. *See, e.g.*, *State v. Hammond*, 8th Dist. Cuyahoga No. 100656, 2014-Ohio-4673; *see also State v. Zimmerman*, 2d Dist. Clark No. 2015-CA-62 and 2015-CA-63, 2016-Ohio-1475.

> Terrell nevertheless argues the United States Supreme Court's recent decision in *Montgomery*, 577 U.S., 136 S.Ct. 718, 193 L.Ed.2d 599, expanded the court's holding in *Miller* to include discretionary sentences. He claims the *Montgomery* court held that even discretionary sentences for juveniles convicted of murder are unconstitutional "unless the sentencing court explicitly concludes that the juvenile is 'irreparably corrupt' or 'permanently incorrigible.'" (Appellant's Brief p.4, quoting *Montgomery* at 735.)

> However, like *Miller*, the *Montgomery* court was discussing the imposition of mandatory life sentences without parole. The decision had nothing to do with mandatory indefinite life sentences, such as the one at issue here. *Montgomery* clarified the court's holding in *Miller* by explaining that life

imprisonment without parole may be justified in rare cases if the court finds the juvenile offender exhibits such depravity that rehabilitation is impossible. *Id.* at 733. Indeed, *Miller* held that before a sentencing court can impose a life sentence without parole, the juvenile defendant "must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored." *Id.* at 736–737.

Despite Terrell's argument to the contrary, *Montgomery* did not expand the court's holding in *Miller*. Nor did *Miller* categorically ban life sentences without the possibility of parole for juvenile offenders. Rather the court in *Miller* concluded that based on the unique circumstances of juveniles, the Eighth Amendment requires juvenile offenders be given a " 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *Miller*, 567 U.S. 460, 132 S.Ct. at 2469, 183 L.Ed.2d 407, quoting *Graham*, 560 U.S. at 75, 130 S.Ct. 2011, 176 L.Ed.2d 825.

Terrell's 21 years to life prison sentence affords him the opportunity to regain his freedom once he has matured and demonstrated rehabilitation. Moreover, as previously explained, we refused to extend the rationale in *Miller* to juvenile cases where the offender is afforded the possibility of parole as in *Hammond*, 8th Dist. Cuyahoga No. 100656, 2014-Ohio-4673, and we decline to do so now.

*Id.*, at ¶ No. 17–22.

{¶ 14} Based upon the fact that Alexander was not sentenced to life in prison without parole and the inapplicability of the case law cited, we find that Alexander has failed to establish any prejudice through his third proposed assignment of error.

*State v. Alexander*, 2017 WL 6398305, *2-*3. I find no error of federal constitutional dimension in the Eighth District's analysis and conclusions on this issue.

During the pendency of this matter, Mr. Alexander requested a stay of proceedings while *State v. Patrick*, 172 N.E.3d 952, 953 (2020), was pending before the Ohio Supreme Court. (ECF #8). Then-Magistrate Judge Limbert recommended denying the requested stay (ECF #15), and the District Court upheld that recommendation (ECF #17). *Patrick* was finally decided on December 22, 2020, and it held that "consistent[] with our decision in *State v. Long*, 138 Ohio St.3d 478,

2014-Ohio-849, 8 N.E.3d 890, a trial court must separately consider the youth of a juvenile offender as a mitigating factor before imposing a life sentence under R.C. 2929.03, even if that sentence includes eligibility for parole." *Patrick*, 172 N.E.3d at 953.

But Mr. Alexander's sentence is neither a life sentence, nor one without the possibility of parole. As a result, *Patrick*'s holding does not appear to provide any relief to Mr. Alexander before this Court. In fact, I note that, pre-*Patrick*, the Sixth Circuit has denied habeas petitions under similar circumstances. *E.g.*, *Starks v. Easterling*, 659 F. App'x 277, 280–81 (6th Cir. 2016) (holding that sentence of life imprisonment plus eleven years for defendant who was 17 at time of the offense did not violate Eighth Amendment); *Bunch v. Smith*, 685 F.3d 546, 553 (6th Cir. 2012) (concluding that Eighth Amendment not violated when defendant who was 16 at time of the offense was sentenced to 89 years' incarceration).

Mr. Alexander's fourth ground for relief is without merit.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, I recommend Mr. Alexander's Petition be **DISMISSED**. I further recommend that Mr. Alexander's request for a hearing be denied. Finally, I recommend that Mr. Alexander not be granted a certificate of appealability.

Dated: <u>February 18, 2022</u>

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).